Nixon Peabody LLP
437 Madison Avenue
New York, New York 10022

By:   Craig R. Tractenberg Pa. Id. 34636
      (212) 940-3722 (Telephone)
      (866) 852-2714 (Facsimile)

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DUNKIN' DONUTS FRANCHISING LLC, DD IP HOLDER LLC and BASKIN-ROBBINS FRANCHISING LLC,**<br><br>**Plaintiffs,**<br><br>- vs. -<br><br>**CLAUDIA III, LLC, ET AL.**<br><br>**Defendants.** | C.A. NO.: 14-CV-2293 |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT

Dunkin' Donuts Franchising LLC ("Dunkin' Donuts Franchising"), DD IP Holder LLC and Baskin-Robbins Franchising LLC (together, "Dunkin' Donuts") submit this memorandum of law in support of their motion for preliminary injunction and summary judgment. Dunkin' needs a preliminary injunction now to stop Defendants from injuring reputation and brand equity until final disposition of the case. If Defendants want to remain a franchisee during the disposition of the case, then Defendants should comply with the system by reporting and paying royalties weekly, and be servicing Baskin' Robbins customers by completely complying with their duties as a Baskin Robbins franchisee in this market carrying and serving Baskin-Robbins products.

Dunkin' Donuts is entitled to summary judgment on all its claims because the undisputed material facts establish beyond peradventure that it properly terminated Claudia III's franchise for failing to remodel and chronic failure to pay royalty and advertising fees. Despite this, Claudia III continues to operate its franchise, use Dunkin' Donuts' registered trademarks and falsely hold itself out to the public as an authorized Dunkin' Donuts franchisee. As the facts concerning Claudia III's breaches are not in dispute and they establish Dunkin' Donuts' right to judgment as a matter law, summary judgment should and must enter in Dunkin' Donuts' favor.

## FACTS

Rather than burden the Court with a repetition of the facts relevant to this motion, Dunkin' Donuts incorporates and relies upon the accompanying Certification of Gary Zullig. Movant does incorporate by reference the record on the first preliminary injunction hearing in this case.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. *Id.* Summary judgment is also appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d. Cir. 1992). The non-moving party cannot avert summary judgment

with speculation or conclusory allegations. *Ridgewood Bd. of Educ. v. N.E for M.E.*, 172 F.3d 238, 252 (3d. Cir. 1999).

With respect to the availability of a preliminary injunction in light of *eBay, Inc. v. Merc Exchange LLC*, 547 US 388, 391 (2006), irreparable harm to support an injunction can be demonstrated where the plaintiff is suffering potential damage to its reputation and good will and cannot control defendant's use of the mark within the control ceded by plaintiff. *US Polo Ass'n v. PRL USA Holdings, Inc.*, 511 F. App'x 81, 85 (2d. Cir. 2013); *Microban Prods Co., v. Api*, No. 14 CIV 41 KPF 2014 No. 1856471 at *20-21 (S.D.N.Y. Mar. 8, 2014).

Irreparable harm is also demonstrated where the entry of a money judgment will be inadequate because it is uncollectable. *Hoxworth v. Blinder Robinson & Co.*, 903 F.2d 186 (1990) (mere availability of a damage remedy does not negate irreparable harm if the judgment cannot be satisfied); *Dechert v. Independent Shoes Corp.*, 311 US 282, 290 (1940); *State Farm Mutual Automobile Insurance v. American Rehab and Physical Therapy*, Inc., No 09-2946 Slip Op. (3d Cir. April 13, 2010) (irreparable harm would occur to State Farm if money judgment payments are evaded).

## ARGUMENT

I. **THE UNDISPUTED MATERIAL FACTS ESTABLISH THAT DUNKIN' DONUTS PROPERLY TERMINATED THE FRANCHISE AGREEMENT BASED ON CLAUDIA III'S FAILURE TO REMODEL AND PAY FEES.**

Dunkin' Donuts is entitled to summary judgment on Count I because the undisputed material facts establish that Claudia III: (1) breached its contractual obligation to remodel its franchise; (2) breached its obligation to pay all royalty and advertising fund fees due to Dunkin' Donuts; and (3) failed to cure its multiple material breaches despite ample opportunity to do so. Having both breached its contractual obligations and failed to cure those breaches in a timely

fashion, Claudia III has no legal basis to complain of Dunkin' Donuts' decision to terminate the Franchise Agreement.

At issue in this case is Claudia III's contractual obligation to remodel its franchise and timely pay royalty and advertising fees. These obligations are clearly expressed in the Franchise Agreement such that there can be no reasonable dispute as to what they require.[1] *See Bukuras v. Mueller Group, LLC*, 592 F.3d 255, 262 (1st Cir. 2010) ("Words that are plain and free from ambiguity must be construed in their usual and ordinary sense, and the agreement should be read in a reasonable and practical way, consistent with its language, background, and purpose.") (internal quotation marks and citation omitted) (applying Massachusetts law). Specifically, section 8.1 of the Franchise Agreement clearly and unequivocally states that "[n]o later than the Remodel Dates described in the Contract Data Schedule, [Claudia III] must remodel the Store in accordance with our then-current remodeling Standards, including those relating to fixtures, furnishings, signs and equipment." (Zullig ¶ 24-31.) Section 5's language concerning the payment of fees is equally clear: "You agree to pay us a Continuing Franchise Fee on or before Thursday of each week, for the seven-day period ending at the close of business on Saturday, twelve days previous" and "You agree to pay us a Continuing Advertising Fee on or before Thursday of each week, for the seven-day period ending at the close of business on Saturday, twelve days previous." (Zulig ¶ 20.)

Here, there can be no reasonable dispute that Claudia III materially breached these contractual obligations. As Mr. Zullig's Declaration establishes, Claudia III did not meet its initial remodel deadline or any of the extended deadlines. (Zullig ¶¶ 25-31.) As this court

---

[1] Section 16.6 of the Franchise Agreement states that it "shall be interpreted, construed and governed by the laws of the Commonwealth of Massachusetts." Ex. A As Pennsylvania law enforces such contractual choice of law provisions, all references will be to Massachusetts law. *See Echols v. Pelullo*, 377 F.3d 272, 275 (3d Cir. 2004) ("Pennsylvania courts generally enforce choice-of-law provisions in contracts.") (citation omitted).

recognized that when it reviewed Dunkin' Donuts preliminary injunction application, Claudia III's failure to remodel is a material breach that permits Dunkin' Donuts to terminate the Franchise Agreement.

> Based on the record before me, I believe it is reasonably likely that plaintiffs will be able to show that they properly terminated the defendant's franchise agreement. Following the terms of the franchise agreement, the plaintiffs sent the defendant multiple notices to cure default of late remodeling. Unquestionably the remodel is not finished. It is not clear to me that Claudia will be able to prove that its failure to perform was caused by Dunkin's failure to meet its obligations. It is possible that the defendants could prevail on counterclaims for Dunkin's role in this default, *but even a successful counterclaim would not mean the agreement was not 'properly terminated.'*

(Memorandum at 8-9) (ECF No. 24) (emphasis added). Now, five months later, nothing has changed and the franchise still has not been remodeled such that "Dunkin ultimately has the right to terminate the agreement if the obligation to remodel remains unfulfilled." *Id.* at 8.

To the extent Claudia III argues that its failure to remodel is somehow all Dunkin' Donuts' fault, the court must subject that argument to Rule 56's rigorous standards. As the text of the Rule establishes, "an opposing party may not rely merely on allegations or denials in its own pleading [to defeat summary judgment]; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). This is especially true where, as here, Claudia III bears the burden of proof for any claim that Dunkin' Donuts breached the Franchise Agreement and therefore relieved Claudia III from its obligation to remodel. *See Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988) ("Where a party opposing a motion for summary judgment has the burden of persuasion, and the moving party has identified sufficient facts of record to demonstrate that no genuine issue of material fact remains, the nonmoving party is obliged to identify those facts of record which would contradict the facts identified by the movant.") (citation omitted); *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) ("Speculation, conclusory allegations, and

mere denials are insufficient to raise genuine issues of material fact.") (citation omitted); *see also Sonfast Corp. v. York Int'l Corp.*, 875 F. Supp. 1088, 1094 (M.D. Pa. 1994) ("In an action for breach of contract, plaintiff carries the burden of proving the breach. Where defendant asserts modification as a defense, the burden shifts to defendant to prove a valid modification.") (citation omitted); *Delmont Gas Coal Co. v. Diamond Alkali Co.*, 119 A. 710, 712 (Pa. 1923) (holding that party claiming excuse for non-performance under contract bears burden of establishing excuse). As Claudia III has not identified and cannot identify facts that justify its complete failure to remodel, summary judgment on this claim is appropriate.

There can also be no reasonable dispute that Dunkin' Donuts is entitled to terminate based on Claudia III's failure to pay royalty and advertising fees. The obligation to pay royalty and advertising fees is a material term of Franchise Agreement, the breach of which permits termination. *See Honey Dew Assocs. v. M & K Food Corp.*, 241 F.3d 23 (1st Cir. 2001) (affirming termination of franchise agreement for failure to pay royalty fees). Here, Claudia III has not made royalty or advertising fee payments for the period of time between September 2014 through February 7, 2015. (Zullig ¶ 36.) Moreover, despite ample opportunity to cure those defaults, it has not done so. Accordingly, Claudia III has materially breached the Franchise Agreement such that Dunkin' Donuts' is entitled to summary judgment on Count I.

**II.  DUNKIN' DONUTS IS ENTITLED TO SUMMARY JUDGMENT ON ITS TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS.**

Dunkin' Donuts is entitled to summary judgment on Counts II and III because the undisputed material facts establish that Claudia III has continued to use Dunkin' Donuts' registered trademarks after termination of its license to do so. As established above, Dunkin' Donuts properly terminated the Franchise Agreement following Claudia III's material breaches of it. Despite such termination and the grant of a reasonable period of time within which to

6

surrender and vacate the premises, Claudia III and the Marottas continue to hold themselves out as a Dunkin' Donuts franchisee and are improperly collecting revenues on the strength of the Dunkin' Donuts' registered trademarks ("Dunkin' Marks") in violation of the Lanham Trademark Act. (Zullig ¶¶5-8, 40.)

Claudia III's continued unauthorized use of the Dunkin' Marks clearly violates sections 32, 43(a), and 43(c) of the Lanham Act. For a violation of section 32 of the Act, Dunkin' Donuts must demonstrate that: (1) the marks are valid and legally protectable; (2) it owns the marks; and (3) Claudia III's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services. *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990); *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994); *see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards."). A violation of section 43(a), which prohibits a false designation of the origin of goods or services, regardless of whether the misrepresentation involves registered marks, requires a showing that: (1) defendant has made false or misleading statements as to its own product or that of another; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury, including declining sales and a loss of goodwill. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 590 (3d Cir. 2002); *Lipton v. The Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995). Section 43(c) of the Lanham Act prohibits a person from using another's famous mark in commerce so as to cause dilution of the distinctive quality

of the mark. 15 U.S.C. § 1125(c); *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996) ("[t]he sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendants' use"); *see generally* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 24.13[1][a] (3d ed. 1995).

There can be no dispute that Dunkin' Donuts owns the Dunkin' Marks based on their registration on the principal register of the United States Patent and Trademark Office. (Zullig ¶¶ 5-8). Such registration is prima facie evidence that Dunkin' Donuts owns the marks and has an exclusive right to their use. *See* 15 U.S.C. § 1115(a).

It is also clear that as an ex-licensee, Claudia III no longer has the right to promote its services and products using the Dunkin' Marks. *S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) (plaintiff violated sections 32 and 43 of the Lanham Act by continuing to operate a service center under the Jiffy Lube name after the termination of its Jiffy Lube Membership Agreement); *Church of Scientology Int'l v. Elmira Mission*, 794 F.2d 38 (2d Cir. 1986). An instructive case on this issue is *Downtowner/Passport International Hotel v. Morlew, Inc.*, 841 F.2d 214 (8th Cir. 1988). In *Downtowner*, the defendant continued to use the franchisor's service marks in operating its hotel after its franchise was terminated. In upholding the district court's preliminary injunction, the Eighth Circuit held that the unauthorized use of registered marks was likely to confuse consumers and constituted a violation of Section 32 of the Lanham Act. *Id.* at 219; *accord Burger King Corp. v. Mason*, 710 F.2d 1480, 1492-93 (11th Cir. 1983), *cert. denied*, 465 U.S. 1102 (1984) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks. . . . Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated.").

4851-0369-8978.1

Here, as in *Downtowner*, Claudia III's continued use of the Dunkin' Marks to promote patronage at its restaurant is certain to cause confusion among the public -- the principal element of a trademark infringement claim under the Lanham Act.[2]  Indeed, there can be no reasonable dispute that Claudia III has deceived and is deceiving customers into believing that its restaurant is affiliated with Dunkin' Donuts.  *See Church of Scientology*, 794 F.2d at 41 (likelihood of confusion affirmed where defendant, a former licensee of plaintiff, continued to use plaintiff's trademark after license was terminated); *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1314 (S.D.N.Y. 1995).

As discussed above, by continuing to display the Dunkin' Marks, Claudia III has misrepresented and is misrepresenting its restaurant's affiliation with Dunkin' Donuts, thereby falsely designating the origin of the restaurant as affiliated with Dunkin' Donuts.  *See Church of Scientology*, 794 F.2d at 41 (burden of showing a likelihood of confusion met under Section 43(a) by demonstrating that moving party and infringer were concurrently using moving party's trademarks after termination of license agreement).  Moreover, the misrepresentation of the restaurant as a Dunkin' Donuts-affiliated business is material and likely to influence the decisions of prospective patrons.  Accordingly, Dunkin' Donuts is entitled to summary judgment under Counts II and III.

Dunkin' Donuts is also entitled to summary judgment under Section 43(c), as Claudia III's association of the Dunkin' Marks with its restaurant will eventually tarnish Dunkin' Donuts' goodwill and business reputation.  Indeed, acts constituting false designation of origin under Section 43(a) can also result in liability for dilution under Section 43(c).  *See* 3 J. Thomas

---

[2]  Conduct that violates section 32 of the Lanham Act (unauthorized use of registered marks) also violates Section 43 of the Act (false designation of origin).  *See Cuisinarts, Inc. v. Robot-Coupe Int'l,* 509 F. Supp. 1036, 1042 (S.D.N.Y. 1981) ("[T]he same facts which substantiate an action for trademark infringement under § 32 will make out an action for false designation under § 43.")  (citation omitted).

McCarthy, supra, § 23.13[1][b]. Moreover, in cases construing state anti-dilution statutes, courts have held that tarnishment can occur when the trademark is linked to goods and services of shoddy quality. *Hormel Foods*, 73 F.3d at 507.

Here, Dunkin' Donuts properly terminated the Franchise Agreement. Accordingly, even if some of the customers may not be confused by Claudia III's infringing use of the Dunkin' Marks, there remains a likelihood that those customers will draw a negative impression from the association between the Dunkin' Marks and the services and products offered by Claudia III that have not been certified to meet Dunkin' Donuts' requirements. That negative association will tend to dilute the distinctive qualities that the Dunkin' Marks enjoy. *See, e.g., id.*; *Acad. of Motion Pictures Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (construing California anti-dilution statute). As there is no reasonable dispute that Claudia III is misusing the Dunkin' Donuts Marks --- Dunkin' Donuts' authentic seal ---Dunkin' Donuts has established that Claudia III's unauthorized use of its registered marks violates sections 32 and 43 of the Lanham Act as matter of law.

Finally, the absence of immediate irreparable harm that informed this Court's decision not to issue a preliminary injunction is no longer an impediment to issuance of a permanent injunction. As the Federal Circuit recognized:

> A permanent injunction issues to a party after winning on the merits and is ordinarily granted upon a finding of trademark infringement. A preliminary injunction is extraordinary relief that alters the status quo during the course of litigation. It is granted only after the requesting party has shown that it is likely to succeed on the merits, that it will incur irreparable harm in the absence of such relief, and that the balance of the equities and the public interest favor granting the injunction. *S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992). Because of the exacting standards that a party must meet to obtain a preliminary injunction, it frequently happens that a party is denied a preliminary injunction pending the disposition of the lawsuit but ultimately prevails on the merits and is awarded a permanent injunction as part of the final judgment in the

case. The two instruments are distinct forms of equitable relief that have different prerequisites and serve entirely different purposes.

*Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996).

## III. DUNKIN' DONUTS IS ENTITLED TO SUMMARY JUDGMENT ENFORCING ITS NON-COMPETITION CLAIM.

Dunkin' Donuts' proper termination of the Franchise Agreement for the reasons stated above also establishes its right to enforce the non-competition covenant (Count IV). At issue here is Claudia III and the Morattas' promise that for two years following termination of the Franchise Agreement they will not have any direct or indirect interest in, perform any activities for, provide any assistance to or receive any financial or other benefit from any business or venture that sells products that are the same as or substantially similar to those sold in Dunkin' Donuts or Baskin-Robbins stores and that is located within five (5) miles from their franchise or any other Dunkin' Donuts or Baskin-Robbins store that is open or under construction. (Zullig ¶ __.) While the reasonableness of post-termination restrictive covenants like this are often challenged, here such challenges are foreclosed as a matter of law because the Massachusetts Supreme Judicial Court addressed the enforceability of this exact restrictive covenant in *Boulanger v. Dunkin' Donuts, Inc.*, and held it to be enforceable. 442 Mass. 635, 646 (2004). The *Boulanger* Court addressed whether the identical two (2) year post-term covenant at issue here was enforceable to prevent a former upstate-New York Dunkin' franchisee from opening a competing business in New Hampshire. *Id.* at 635. In reaching its determination that the covenant was enforceable, the *Boulanger* Court began its analysis by determining that restrictive covenants in the franchise context should be interpreted under the more liberal "sale of business" context. *Id.* at 639 ("In the context of the sale of a business, courts look less critically at covenants not to compete because they do not implicate an individual's right to employment to the same degree as in the employment context.") (internal quotation marks and citation omitted).

Next, the court recognized that Dunkin' Donuts has legitimate protectable interests in its trade secrets, confidential information and goodwill. *Id.* This includes Dunkin' Donuts' operating manuals, websites, recipes, financial information, marketing and promotion strategy, new product development and location of sites for new stores and building plans. *Id.*

Lastly, the *Boulanger* Court addressed the reasonableness of the geographic and temporal scope of the restrictive covenant. *Id.* at 643-45. In holding that the geographic scope of "five miles from any other Dunkin' Donuts store . . ." was reasonable, the court recognized that "restrictive covenants can apply to large geographic areas" and "where there is a sale of a business, geographic areas can be larger than in an employment context." *Id.* at 644. In addition, the *Boulanger* Court recognized that a two year limitation is per se reasonable. *Id.* at 643 ("The plaintiff does not challenge the covenant's two-year limit. In any event, it is reasonable.") (citation omitted).

The facts and holding of *Boulanger* squarely address the facts and issues presented here such that *Boulanger* is binding precedent on this court. *See Hunt v. United States Tobacco Co.*, 538 F.3d 217, 220 (3d Cir. 2008) ("In those few instances in which the highest state court has recently spoken to the precise question at issue in a particular setting, the duty of the federal court to determine and apply state law is easily met. After all, [t]he State's highest court is the best authority on its own law.") (internal quotation marks and citation omitted); *see also Verizon Commc'ns, Inc. v. Pizzirani*, 462 F. Supp. 2d 648, 655 (E.D. Pa. 2006) (enforcing New York choice of law clause in restrictive covenant); *All Seasons Servs., Inc. v. Newnam*, 2006 WL 2052407 (Pa. Com. Pl Jul. 20, 2006) (enforcing Massachusetts choice of law clause in restrictive covenant). *Boulanger* recognizes and holds that the restrictive covenant at issue here is governed by the more liberal "sale of business context," that Dunkin' Donuts' interests in protecting its

confidential information is legitimate and that the geographic scope tied to the location of other franchised locations is reasonable. *See also Maaco Franchising, Inc. v. Augustin*, No. 09-4548, 2010 WL, 1644278, at *3 (E.D. Pa. Apr. 20, 2010) (holding that post-termination restrictive covenant is enforceable under Pennsylvania law so long as it: (1) relates to a contract for the sale of goodwill; (2) is supported by adequate consideration; and (3) is reasonably limited in both time and territory) (citation omitted); *Athlete's Foot Mktg. Assocs. v. Zell Inv., Inc.*, No. 00-0186, 2000 WL 426186, at *9-10 (W.D. Pa. Feb 17, 2000) (holding under Pennsylvania law that franchise agreement relates to sale of goodwill). Accordingly, Dunkin' Donuts is entitled to summary judgment enforcing the restrictive covenant in the Franchise Agreement.

## **CONCLUSION**

For the foregoing reasons, Dunkin' Donuts respectfully requests that the Court grant its motion for summary judgment.

    Respectfully submitted,

s/ Craig R. Tractenberg
Craig R. Tractenberg, Esq. (Pa. ID #34636)
Nixon Peabody LLP
PA ID No. 34636
1515 Market Street
Suite 1200
Philadelphia, PA 19102
(215) 246-3525
Attorneys for Plaintiffs

4851-0369-8978.1