## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DUNKIN DONUTS FRANCHISING LLC, et al.,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | **No.14-2293** |
| v. | : | |
| | : | |
| **CLAUDIA III, LLC, et al.,** | : | |
| **Defendants.** | : | |

**MCHUGH, J.**                                                                                    **JULY 14, 2015**

### MEMORANDUM

I.   Introduction

Plaintiffs own the trademarks of the well-known brands, "Dunkin' Donuts" and "Baskin-Robbins." Plaintiffs also oversee a national network of franchises that sell donuts, ice cream, and other food products using Plaintiffs' trademarks and other intellectual property. Defendants Manfred Marotta and Lynne Marotta operated one such Dunkin' Donuts franchise through their corporation, Claudia III, LLC (also a defendant in this action).

Plaintiffs and Defendants entered into a Franchise Agreement in 2009. Pursuant to this contract, Plaintiffs granted Defendants a license to use Plaintiffs' trademarks and trade dress and permitted Defendants to receive other forms of logistical and marketing support from Plaintiffs. Defendants agreed to pay certain fees to Plaintiffs and follow Plaintiffs' procedures. One provision of the Franchise Agreement required Plaintiffs to remodel and refurnish their shop periodically.

1

Defendants began, but did not complete, the required renovations.  Defendants contracted with an architecture firm approved by Dunkin', A & A Architects,[1] to design the remodel.  The architect drew up plans for a remodel and submitted the plans to local government authorities for approval of building permits.  The plans called for placing a bathroom over a "well stub," a plugged top of a water well, and county health officials objected to the placement of a well stub in the middle of a bathroom floor.  Health officials refused to allow the renovations to continue until the plans changed.

For varied and sometimes vague reasons, the Parties have been unable to successfully revise the renovation plans.  Mr. Marotta and the architect disputed billing for the revisions.  Dunkin' did not approve Mr. Marotta's request to remove a Baskin Robbins freezer, which might have opened floor space and permitted the bathroom and well stub to be separated, until long after Mr. Marotta initially made the request.  When the parties appeared before this Court for a preliminary injunction hearing, it was clear that no one had a solution to the well stub problem.

Defendants did not complete the remodel, and Plaintiffs terminated Defendants' Franchise Agreement in 2014.  However, Defendants did not cease operating their shop as a Dunkin' Donuts.

Shortly after terminating the Franchise Agreement, Plaintiffs filed this lawsuit.  The lawsuit alleges Defendants breached the Franchise Agreement and continued to operate their store and use Plaintiff's intellectual property without a license to do so, in violation of federal trademark and unfair competition law.  Plaintiffs also sought to enforce a restrictive covenant in the Franchise Agreement.

---

[1] The firm is now Third-Party Defendant in this case.

II.     Standard of Review

Plaintiffs have moved for summary judgment of their claims against Defendants.  Federal Rule of Civil Procedure 56 instructs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When a plaintiff who bears the burden of proof at trial moves for summary judgment, that plaintiff must produce evidence satisfying each element of its claims and show there is "no genuine dispute as to any material fact that would prevent the court from rendering judgment in the movant's favor."  *Moore's Federal Practice* § 56.40[1][a].  The plaintiff's burden to show it is entitled to judgment as a matter of law is a heavy one.  As *Moore's Federal Practice* puts it, the plaintiff's evidence "must be so powerful that no reasonable jury would be free to disbelieve it."  *Id.* at § 56.40[1][c].  "Moreover, any inferences to be drawn must be viewed in the light most favorable to the party opposing summary judgment."  *McCarthy v. Recordex Servs., Inc.*, 80 F.3d 842, 847 (3d Cir. 1996).

III.    Discussion

a. Breach of the Franchise Agreement

A Franchise Agreement is a contract, and to prevail on a breach of contract claim, a party must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."  *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. Ct. 2005).  Here there is no dispute that a contract exists between Plaintiffs and Defendants.  Nor is there doubt that the contract required Defendants to pay certain fees to Plaintiffs and to remodel their shop.  Franchise Agreement Section 5 ("Fees, Payments and Reporting of Sales"); Franchise Agreement Section 8 ("Repairs, Maintenance, Refurbishment and Remodel").

Plaintiffs offer undisputed evidence that Defendants breached obligations imposed by the Franchise Agreement. Mr. Marotta conceded at the Preliminary Injunction hearing that the remodel had not taken place. See Transcript of Preliminary Injunction Hearing on June 23, 2014 at 113 (Direct of Manfred Marotta) (explaining the well stub issue needed to be resolved before renovations could complete). Dunkin' has produced Notices sent to Defendants informing them of their contractual defaults and instructing them to cure those defaults. Dunkin' has also produced Notices of Termination sent to Defendants to dissolve the franchise relationship.

More recently, Dunkin' has also produced an affidavit by Gary Zullig, a Senior Collections Specialist for Plaintiffs. Mr. Zullig avers that in addition to failing to complete the remodel, Defendants ceased paying fees to Plaintiffs in the Fall of 2014. Defendants offered no defense to this evidence, even after I entered an Order specifically instructing them to inform the Court "whether Royalty and Advertising Fund Fees have been paid in a timely fashion." Order, March 9, 2015.

Plaintiffs support the final element of their claim—damages that result from the breach—by showing that Defendants are failing to pay Plaintiffs monies owed.

I find that Plaintiffs have produced evidence establishing each element of the breach claim. I further find that Defendants have failed to identify evidence in the record that shows any material dispute as to any of these elements. When contesting the Preliminary Injunction, Defendants asserted Dunkin' was at least partially at fault for Defendants' defaults. This argument does not save Defendants from summary judgement on this claim. Defendants do not contest that the Franchise Agreement was terminated after Plaintiffs complied with the Agreements Notice to Cure requirements or that the remodel never took place. Furthermore, even if Dunkin' were partially responsible for the default, Dunkin's claim would not be defeated.

"It is possible that the [D]efendants could prevail on counterclaims for Dunkin's role in this default, but even a successful counterclaim would not mean the agreement was not 'properly terminated.' " Memorandum to Order Denying Initial Motion for Preliminary Injunction at 8–9; *S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) ("a terminated franchisee's remedy for wrongful termination is an action for money damages, and not the continued unauthorized use of its franchisor's trademarks.") (*citing Burger King Corp. v. Hall*, 770 F.Supp. 633, 637 (S.D. Fla. 1991)). Accordingly, I shall grant Plaintiffs summary judgment on this claim.

      b. Trademark Infringement and Unfair Competition Claims

To succeed on their trademark infringement claim, Plaintiffs must establish "(1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). In this case, the required showing for the unfair competition claim under 15 U.S.C. 1125(a) is not different in any important respect. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards").[2]

Here, Plaintiffs undisputedly own valid marks that Defendants continued to use after Plaintiffs terminated the Franchise Agreement. The Third Circuit "held that 'there is a great likelihood of confusion when an infringer uses the exact trademark' as the plaintiff." *S & R*

---

[2] In their Motion for Summary Judgment, Plaintiffs also argue they are entitled to relief under 15 U.S.C. 1125(c). Plaintiffs' Complaint alleges Defendants "continued unauthorized use of the Plaintiffs' trademark and trade name violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a)." Complaint ¶ 30. The Complaint's Unfair Competition Count makes no mention of § 1125(c), which relates to the dilution of famous marks, so I will not consider it separately.

5

*Corp.*, 968 F.2d at 375–76.  It is clear, then, that Defendants' continued unauthorized use of Plaintiffs' marks is likely to cause confusion.  Defendants have not produced evidence creating a dispute as to any element of the trademark infringement and unfair competition claims, and I therefore will grant summary judgment to Plaintiffs on those claims.

      c.  Enforcement of Non-Competition Clause

Plaintiffs' final request for relief asks the Court to enforce the non-competition clause in the Franchise Agreement.  Franchise Agreement Section 10, paragraph 10.2 states that for two years following the termination of the agreement, Defendants may not participate in "any business or venture that sells products that are the same or substantially similar to those sold in Dunkin' Donuts or Baskin-Robbins stores and located within five (5) miles" of any other of Dunkin' or Baskin-Robbins store.

Plaintiffs invoke a choice of law provision in the Franchise Agreement which states the Agreement is governed by the laws of the Commonwealth of Massachusetts.  Franchise Agreement ¶16.6.  "Pennsylvania courts will uphold choice-of-law provisions in contracts to the extent that the transaction bears a reasonable relation to the chosen forum." *Gay v. CreditInform*, 511 F.3d 369, 390 (3d Cir. 2007) (citing *Churchill Corp. v. Third Century, Inc.*, 578 A.2d 532, 537 (Pa. Super. Ct. 1990).  "Ordinarily the law chosen must be that of a jurisdiction where a significant enough portion of the making or performance of the contract is to occur or occurs." *Churchill Corp.*, 578 A.2d at 537.  The transactions at issue here related, as far as the record shows, to businesses in Pennsylvania; the individual Defendants have resided in Pennsylvania; and the corporate Defendant is a Pennsylvania limited liability company.  The Plaintiff entities have their principle places of business in Massachusetts, and the Agreement itself states it was made in Massachusetts.  This seems to be enough to justify the choice of law provision. *See*

*Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 56 (3d Cir. 1994); *Verizon Communications, Inc. v. Pizzirani*, 462 F. Supp. 2d 648, 655 (E.D. Pa. 2006).

Under Massachusetts law, I find the covenant to be enforceable. The Massachusetts Supreme Court upheld a nearly identical Dunkin' Donuts restrictive covenant in *Boulanger v. Dunkin' Donuts, Inc.*, 815 N.E.2d 572 (Mass. 2004). That court found the covenant not to compete protected legitimate business interests, contained reasonable limits on its temporal and geographic reach, and did not harm the public interest. This decision is controlling.

IV. Permanent Injunction

The Third Circuit has explained:

> In deciding whether to grant a permanent injunction, the district court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.

*Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). Here, as explained above, Plaintiffs have shown success on the merits of their claims. I am also satisfied that the potential injury to their brand if an injunction does not permanently prevent Defendants from operating their store as an un-licensed Dunkin' Donut shop would be irreparable. This permanent injunction only prevents Defendants from operating a store in a way that infringes Plaintiffs' marks, which Defendants have no right to do in the first place, so I do not find the injunction will inflict excessive injury on Defendants. Finally, the public's interest in the enforcement of contracts and trademark law weighs in favor of granting the permanent injunction. *See MarbleLife, Inc. v. Stone Resources, Inc.*, 759 F.Supp.2d 552, 563–64 (E.D. Pa. 2010) (finding public interest in trademark case favored injunction because of public's interest in avoiding confusion due to infringement and in enforcing contracts).

V.  Conclusion

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment shall be granted as to all Counts of their Complaint.  An appropriate Order follows.

/s/ Gerald Austin McHugh<br>United States District Court Judge